Dear President Champagne and Mayor Villere:
You have each requested an opinion from this office with regard to the appointment by the Mayor of Jerome Elzy as Recreation Director and the confirmation process of that appointment by the City Council. These requests have been consolidated under the above Opinion Number. This office is reluctant to render opinions of a purely local nature, but because the chief executive and legislative officers have asked for our views we will give our opinion.
From your requests, I understand the facts to be as follows:
Mayor Villere appointed Jerome Elzy as Recreation Director on October 14, 1991. Mr. Elzy's appointment was thereafter submitted to the city council for conformation. Action (a motion) to confirm this appointment was taken within 60 days of the appointment.
Mr. Champagne's request letter indicates that "the . . . Council entertained a motion to confirm Mr. Elzy's appointment . . . [however, this] motion failed to pass." (I understand this to mean that a vote was taken on the motion and it was defeated.) Mr. Villere's request letter indicates that "the . . . Council failed to confirm the appointment of Mr. Elzy on November 12, 1991." This does not appear to contradict Mr. Champagne's statement. However, in another portion of his request letter, referring to the previous council rejection of Mr. Elzy almost one year before his reappointment, Mr. Villere states that "Section 7-11 . . . denotes a result based on no action at all by the Council obviating the necessity for a vote by its own terms." (emphasis added). This last statement seems to imply that no action was taken by the council within the required sixty days. However, Mr. Villere states that the council "failed to confirm . . . on November 12, 1991", which implies (negative) action on the appointment within the required sixty days.
Thereafter, the Mayor continued Mr. Elzy's "employment" with no change in salary. On October 19, 1992, the Mayor reappointed Mr. Elzy to the Recreation Director position.
Mr. Champagne's request letter indicates that Mr. Elzy was the defacto department director after his appointment was rejected by the council. Mr. Villere's request letter, however, merely states that Mr. Elzy was an "employee" of the recreation department between November 12, 1991 and October 16, 1992, when he was reappointed Recreation Department head by the Mayor. Mr. Villere further states that Mr. Champagne's assumption that Mr. Elzy was the "defacto" department director is incorrect.
Neither request actually specifies the position occupied by Mr. Elzy after the council's negative action. However, the Proposed Appropriations for the year ending December 31, 1993, which was submitted on September 24, 1992, indicates that the position of Recreation Director was budgeted for 1992 at a salary of $23,000.00 and that the budgeted year-to-date for 1992 was $15,334.00. This indicates that someone occupied the Recreation Director position in 1992. Further, the list of salaries for the City of Covington indicates that Jerome Elzy's salary for 1992 was $23,000.00. From these facts, it appears that Jerome Elzy occupied the position of Recreation Director during 1992.
As stated above, it is unclear from your letters whether Mr. Elzy was, in fact, acting as Recreation Department Director from November 12, 1991 to the present, and therefore we can give no opinion in this regard. However, in determining his status the following facts concerning Mr. Elzy and the Recreation Department between November 12, 1991 and the present would be relevant:
1. What was his position and/or title?
2. What was his physical office location?
3. What duties did he perform?
4. Who, if anyone, supervised him?
5. Who, if anyone, did he supervise?
6. What compensation did he receive?
7. What was the source of that compensation?
8. Did he regularly use equipment or vehicles allocated to the Recreation Director?
9. Was any other person designated to perform the usual activities of the Recreation Director?
10. Was any other person nominated as Recreation Director by the Mayor?
The City of Covington is a municipality operating under a Home Rule Charter, and all references to particular Sections refer to the Covington Home Rule Charter.
Section 2-06(B) provides that neither the council or its members may involve themselves in the appointment, removal, direction or supervision of any city administrative officer or employee, except as the charter may otherwise provide.
Section 3-01 provides that the Mayor is the chief executive officer and exercises general executive and administrative authority over all city departments. Section 3-09(A)(2) empowers the Mayor to appoint (and suspend or remove for just cause) all city employees and appointive administrative officers. Section 3-09(A)(4) authorizes the mayor to direct and supervise the administration of all departments, offices and agencies of the city, except as otherwise provided by the charter.
Section 4-01 provides that all departments are under the direction and supervision of the mayor, and that the heads of departments are to be appointed by the mayor, subject to confirmation by the city council. Section 4-07 (A) provides that the Recreation Director is the head of the Recreation Department.
Section 7-11 provides that the names of all appointees requiring council confirmation must be submitted to the council by the Mayor not later than the next regular meeting held after appointment. This Section further provides that the council must act on confirmation not later than sixty days after receipt from the mayor of notification of the appointment, and that, should the council fail to act within the prescribed time, confirmation is deemed to have been given.
In answer to Mr. Champagne's questions, the opinion of this office is as follows:
It is somewhat unclear whether the council actually acted (voted) on the appointment, and that the confirmation motion was defeated (failed to pass) on November 12, 1991. If the council failed to act on the appointment within sixty days of notification to it, confirmation of the appointment would be deemed to have been given. Under these circumstances, Mr. Elzy would then be the confirmed Recreation Director, and Mr. Champagne's questions would be moot.
Assuming that the council acted within the required sixty days, and that the confirmation motion was defeated by affirmative council action, Mr. Elzy's appointment as Recreation Director would have ended on November 12, 1991 when the council rejected the appointment. Under these circumstances, Mr. Elzy's continuation as Recreation Director after his rejection by the council would be improper and in violation of the charter. His continued "employment" in another position, however, would not be improper, assuming that that position did not require council confirmation and that the salary paid to Mr. Elzy was authorized by the appropriate authority.
The appointment of Mr. Elzy to the position of Recreation Director on October 14, 1991 was for a budgeted (fiscal) year. Thus, his failure to be confirmed by the council for that position (during that budgeted year) would disqualify him from being reappointed during that same budgeted year. However, the charter is silent with regard to, and thus does not prohibit that same individual from being reappointed and submitted to the council for confirmation action in another (the next) budgeted year, as was apparently the case here. In such case, the council must take confirmation action (vote) on this "new" appointment.
In answer to Mr. Villere's questions, the opinion of this office is as follows:
The Charter is silent as to, and thus does not mandate the mayor's action to appoint a department head within any specific period of time. This action by the Mayor is apparently discretionary.
The Charter is silent as to, and thus does not limit the number of times the mayor may appoint a particular person as department head. This, however, is subject to the qualification indicated in answer to Mr. Champagne's questions (above).
With regard to the hiring as a city employee of an individual who has failed to be confirmed, please see our answer to Mr. Champagne's questions (above).
Sections 2-06(B), 3-01 and 3-09(A)(2) appear to prohibit the council or council members from "attempting" to remove a city "employee" who has failed to be confirmed as a department head. However, this assumes that the "employee" is being employed in a position other than that of the department head. If such "employee" is employed as the department head after his appointment to that position was "rejected" by the council by proper action, the council might seek to compel, through the courts, the removal of that person from the position of department head.
Section 2-06(B) does prohibit the council or its members from involving themselves in the appointment of any city administrative officer or employee, except as the charter may otherwise provide. (This last clause appears to refer to the council confirmation process.) This would include soliciting applications for, and subsequently screening and reviewing applicants for the position of department head.
The mayor does have the power to direct and supervise departments created by or under the charter. See Sections Section 3-01 and 3-09(A)(4). This implies that, in the absence of a department head, either permanent or acting, the mayor may, and actually must perform the duties of the department head. However, under Section 3-10, the mayor may not be additionally compensated for performance of these duties.
Trusting this to be sufficient for your purposes, I am
Yours very truly
 RICHARD P. IEYOUB, Attorney General
 BY: NORMAN W. ERSHLER Assistant Attorney General
RPI/NWE:pb 1772
xc: Hon. Gary E. Hinton